UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | *CRIMINAL NO. 2:10-cr-0224-01 |
| VERSUS | *JUDGE HAIK |
| TERRY TERREAL HOLMES | *MAGISTRATE JUDGE HILL |

REPORT AND RECOMMENDATION

Before the court is the Motion to Suppress or Request for a *Franks* Hearing filed by defendant, Terry Terreal Holmes ("Holmes"). [rec. doc. 107]. The government filed Opposition. [rec. doc. 112]. Because defendant's Motion presents no factual issues which cannot be resolved on the record before the court, an evidentiary hearing is not necessary. *See United States v. Dean,* 100 F.3d 19 (5th Cir. 1996) *citing United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983).

For the following reasons, it is **RECOMMENDED** that the Motion to Suppress and Request for a *Franks* Hearing be **DENIED.**

BACKGROUND

The defendant, Terry Terreal Holmes, was indicted on multiple drug and firearms counts on July 29, 2010. Count 1 charges Holmes with conspiracy to possess with intent to distribute cocaine base and marijuana in violation of 18 U.S.C. § 846. The conspiracy is alleged to have begun on an unknown date and lasted until about April 26, 2010. The conspiracy allegedly was centered on property located in the four hundred block of

Booker Street in DeQuincy, Louisiana. It was from Booker Street that the conspirators allegedly unloaded, stored, distributed and manufactured controlled substances.

The remaining counts, counts two through thirteen, allege substantive criminal offenses which were allegedly committed in furtherance of the conspiracy. These counts include maintaining drug involved premises, 403, 405 and 407 Booker Street, in violation of 21 U.S.C. § 856(a)(2) (count three); possessing with intent to distribute cocaine base, marihuana and cocaine on March 20, 2007 in violation of 21 U.S.C. § 841(a)(1) (counts four, five and six); being a felon in possession of firearms on March 20, 2007 in violation of 18 U.S.C. § 922(g)(1) and 924(e) (count seven); and possessing firearms in furtherance of drug trafficking crimes on March 20, 2007, in violation of 18 U.S.C. § 924(c)(1) (count eight).

The indictment stems from the seizure of evidence from 403 and 405 Booker Street in DeQuincy, Louisiana on March 20, 2007, pursuant to search warrants issued by Judge Ritchie of the Louisiana Fourteenth Judicial District Court on March 13, 2007. 405 Booker Street is the alleged residence of Holmes; 403 Booker Street is a laundry mat and pool hall allegedly run by Holmes. The warrants were issued based on two identical affidavits, alleging the same facts, prepared by Detective Trent Hanson ("Hanson"). Holmes seeks to have the drugs and firearms which are the subject of these charges suppressed, arguing that they were obtained in violation of his Fourth Amendment rights.

More specifically, Holmes argues that the affidavits fail to establish probable cause to search the two premises because they fail to establish the reliability of the informants, rely on stale information and were not executed within the delays provided for by Louisiana law. Holmes additionally argues that the affidavits contain false information, namely, that the gas service at 403 Booker was in Holmes' name, that Holmes had a safe in his residence, where cash and drugs were kept and that Holmes' residence, 405 Booker, had a light on the porch which was seen coming on and off during surveillance. It is these allegedly false statements in the affidavits that Holmes argues warrant a *Franks*[1] hearing.

## LAW AND ANALYSIS

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Thus, the Fourth Amendment bars only unreasonable searches and seizures. *Maryland v. Buie*, 494 U.S. 325, 331, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). Accordingly, the purpose of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *United States v. Garza*, 921 F.2d 59, 60 (5th

---

[1] *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In *Franks*, the Supreme Court has held that, if an affiant "knowingly and intentionally, or with reckless disregard for the truth," includes a false statement in an affidavit, and without that false allegation probable cause would have been lacking, "the Fourth Amendment requires that . . . the search warrant must be voided and the fruits of the search excluded . . . ." *Franks*, 438 U.S. at 155-56.

Cir. 1991) *citing Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967).

Holmes' argument that the warrants lack probable cause because the affidavits in support of the warrants fail to establish the reliability of the informants is without merit. While the affidavits lack any assertion by Detective Hanson that his sources are reliable[2], it is clear that the information provided by all three informants is mutually re-enforcing and mutually corroborative. Additionally, some of the information supplied by the informants was independently verified by surveillance performed by officers. Some of the crucial incriminatory facts contained in the affidavits were cross-verified by the three independent confidential sources, none of whom had any apparent relation to the other, including the facts that (1) both premises had been the situs of illicit drug transactions

---

[2]Hanson states that the first source of information "has provided information in the past concerning drug activity", and that the second source "has provided information in the past regarding other suspect's criminal activity." Hanson does not state, however, that these sources provided *reliable* information in the past, although that appears to be the suggestion. The third informant was a criminal suspect who related the information in connection with a statement given against his penal interest as to his involvement in an illicit drug transaction, a fact which weighs in favor of the reliability and trustworthiness of the information provided. *See United States v. McKeever*, 5 F.3d 863, 865 (5th Cir. 1993) ("The fact that the CI's statements were against his own penal interest amounts to substantial corroboration."); *United States v. Esquivql-Rangel,* 93 Fed.Appx. 662, (5th Cir. 2004)*; United States v. Steele,* 353 Fed.Appx. 908, 910, 2009 WL 4039444, *2 (5th Cir. 2009) ("Although the informant in this case was a first-time informant, she earned Officer White's trust by identifying multiple drug dealers that Officer White already knew. In addition, the informant admitted to purchasing cocaine from Steele, an admission against penal interest. Both of these factors added to the informant's credibility."); *United States v. Ashley*, 569 F.2d 975 (5th Cir.), *cert denied*, 439 U.S. 853, 99 S.Ct. 163, 58 L.Ed.2d 159 (1978) (that informant's statement is against penal interest supports finding of credibility); *United States v. Harris,* 403 U.S. 573, 583-584 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) ("Admissions of a crime, like admissions against proprietary interests, carry their own indicia of credibility . . . . That the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct."); *see also United States v. Mills*, 2010 WL 5855915, *2 (E.D. Tex. 2010).

involving Holmes for a substantial period of time, from at least August 2006[3] through March 2007 when the warrants were executed, (2) that Holmes was in possession of a silver or chrome handgun, which he kept in his residence, and a black gun which Holmes kept in the laundry mat, and (3) that Holmes maintained his property and businesses in the names of others to avoid seizure by law enforcement.

Furthermore, some of the information supplied by the informants was confirmed by independent police investigation.  Officers conducted surveillance after receiving information from the first informant, and personally observed conduct consistent with illegal drug activities, to wit, hand to hand contact being made between persons who drove to the premises and persons who emerged from the premises after a brief encounter, and persons standing outside the premises, directing vehicles to the Holmes residence, laundry mat and pool hall.

Officers additionally conducted surveillance after receiving information from the second informant, again observing conduct consistent with illicit drug transactions, to wit, persons arriving at the Holmes residence, laundry mat and pool hall, without clothes baskets, entering the premises and leaving a short time thereafter, and persons outside the premises acting as lookouts communicating with each other by walkie-talkie.

---

[3] As evidenced by the warrants submitted by the defense which were referenced by Hanson in his affidavit supporting issuance of the search warrants at issue in this case, the illicit drug trade at the Holmes property had apparently begun as early as June 2005.  *See* rec. doc. 108, pgs. 19-20.

Moreover, an undercover officer accompanied the second informant to the Holmes residence to purchase crack cocaine, at which time the officer heard and observed Holmes telling the informant that he was "out" at that time, but to return later to complete the transaction. The police also independently verified that Holmes had been involved in illicit drug activity on the subject premises, obtaining three past arrest warrants for Holmes charging Holmes with distribution of crack cocaine from his residence.

Finally, officers additionally confirmed the accuracy of the first and second sources' statements that Holmes maintained his property and businesses in the names of others to avoid seizure by law enforcement, verifying that Holmes' property and a car were in the name of one of Holmes' girlfriends, Savannah Taylor, and that another vehicle was in the name of another woman.

The Fifth Circuit has held "that mutually enforcing and corroborative information from confidential sources is a strong indicator of probable cause even when the individual reliability of the sources is not clearly established." *United States v. Weinrich*, 586 F.2d 481, 490 (5th Cir. 1978) (citations omitted). *See also United States v. Harris*, 403 U.S. 573, 580-81, 91 S.Ct. 2075, 2080 and *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960). Moreover, while there may not have been a light on Holmes' porch at his residence, the material details of the informants' stories were verified by independent police investigation. This confirmation tends to make it highly

probable that "the informant had not been fabricating his report out of whole cloth." *Weinrich*, 586 F.2d at 490 (citations omitted).

Holmes also argues that the warrants rely on stale information. That argument is likewise unavailing. While the first informant revealed information seven months before the warrants were obtained, the second and third sources provided information on March 6, 2007 and March 12, 2007, respectively, only days before the warrants were obtained on March 13, 2007. These latter informants re-confirmed the information provided by the first informant that Holmes was still selling illegal drugs from his residence, the laundry mat and pool hall just one week before the warrants were issued. Moreover, the affidavit relies on the contemporary observations of officers, including surveillance and an attempted drug purchase with an undercover officer present, performed after receipt of information provided by the second informant.

Thus, the information on which the warrants were obtained was clearly not stale. Indeed, even without the information provided by the first informant, the warrants could have been issued on the information supplied solely by the second and third informants, coupled with the contemporary independent police verification of some of the details provided by these informants.

Finally, as previously noted, because the affidavits demonstrate a longstanding, ongoing pattern of criminal activity at the subject premises involving Holmes, the allegations in the affidavit are not stale. *See United States v. Gildon*, 340 Fed. Appx. 956,

957 (5th Cir. 2009) *citing United States v. Pena–Rodriguez*, 110 F.3d 1120, 1130 (5th Cir. 1997) (holding that information reaching back over long periods may be used to support an affidavit "if the information of the affidavit clearly shows a long-standing, ongoing pattern of criminal activity"); *United States v. Craig*, 861 F.2d 818, 822 (5th Cir. 1988); *United States v. Tran*, 339 Fed. Appx. 423, 424 (5th Cir. 2009).

      Holmes' additional argument, that the delay in executing the warrants made the seizure violative of Holmes' Fourth Amendment rights, is likewise without merit. The warrants do not specify a period within which they must be executed. The warrants were issued on March 13, 2007 and executed only seven days later on March 20, 2007. Clearly, a seven day delay in executing the warrants complies with both federal and state law. *See* former Fed. R. Crim. P. 41(c)(1) (providing that a warrant shall be executed within a specified period of time not to exceed 10 days); Fed. R. Crim. P. 41(e) (providing that a warrant shall be executed within a specified time not to exceed 14 days); La. C. Cr. P. 163 (providing that "[a] search warrant cannot be lawfully executed after the expiration of the tenth day after its issuance.").

      Even when the federal rule required that a warrant be executed "forthwith," executing officers were allowed "a certain latitude of action" to perform "the delicate, often difficult and occasionally dangerous mission of executing warrants." *United States v. Bradley*, 428 F.2d 1013, 1016 (5th Cir.1970). Moreover, even when the "forthwith" requirement was violated, evidence was excluded only if the delay resulted in "legal

prejudice." *Id*. The fact that a search uncovered prejudicial evidence did not constitute legal prejudice unless the presence of the evidence was attributable to the delay. *Id*. Holmes makes no showing that this is true here. Likewise, under Louisiana state law, delay affects a warrant only if the passage of time makes it doubtful the object sought in the warrant will still be at its location. *United States v. Stewart*, 353 F. Supp.2d 703, 708 (E.D. La. 2004) *citing State v. Ginorio*, 619 So.2d 790, 793 (La. App. 4th Cir.), *writ denied*, 625 So.2d 1039 (La. 1993); *State v. McLeod*, 843 So.2d 1268, 1277-1278 (La. App. 3d Cir. 2003) *citing Ginorio*. In light of the longstanding and ongoing pattern of criminal activity at the subject premises, no such showing can be made in this case. *See Id*. The delay of only seven days between the issuance of the search warrants and their execution is not a Constitutional violation, comports with federal and state law, and was reasonable under the circumstances.

Holmes also argues that the affidavits contain false information, namely, that gas service at 403 Booker was in Holmes' name, that Holmes had a safe in his residence at 405 Booker, where cash and drugs were kept, and that Holmes residence, 405 Booker, had a light on the porch which was seen turning on and off during surveillance. It is these alleged falsities that Holmes alleges entitle him to a *Franks* hearing. However, Holmes has not provided any evidence that Hanson's statements were deliberately false or made with reckless disregard for the truth. Even if Holmes had made such a showing, however, the affidavits, after the redaction of these statements, still establish probable


cause. *See United States v. Sibley*, 448 F.3d 754, 757-59 (5th Cir. 2006). Accordingly, neither an evidentiary hearing nor suppression is warranted.

A motion to suppress should be granted "where a Fourth Amendment violation has been substantial and deliberate." *Franks*, 438 U.S. at 171. The so called "good faith" exception to the requirement that search warrants can only be issued after a showing of probable cause, provides that "evidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992); *United States v. Mays*, 466 F.3d 335, 343 (5th Cir. 2006) *citing United States v. Leon*, 468 U.S. 897, 922-923, 104 S.Ct. 3405 , 82 L.Ed.2d 677 (1984). This good faith exception is inapplicable if "the issuing judge was misled by information in an affidavit that the affiant knew or should have known was false except for his reckless disregard of the truth." *Mays*, 466 F.3d at 343 *quoting Leon*, 468 U.S. at 923. Holmes contends Hanson's affidavits fall in this category, rendering the good faith exception inapplicable.[4]

An affidavit supporting a warrant carries a presumption of validity. *Franks*, 438 U.S. at 171. Nevertheless, a defendant challenging that presumption is entitled to an

---

[4] Another exception to the good faith exception occurs where the underlying affidavit is "bare bones," that is, "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Mays*, 466F.3d at 434 *quoting Leon*, 468 U.S. at 923 (internal quotation marks and citation omitted). Although Holmes alludes to the bare-bones exception, in light of the above discussion rejecting Holmes' arguments as to why probable cause is lacking, the undersigned will address this exception no further, except to note that the affidavits at issue herein are not "bare bones" affidavits. To the contrary, the affidavits provided the Judge with facts, and not mere conclusions. *See Satterwhite*, 980 F.2d at 321.

evidentiary hearing if he makes a substantial preliminary showing that a statement material to the probable cause finding in a warrant affidavit was knowingly and intentionally false, or was made with reckless disregard for the truth. *Id*. at 155-156. A "challenger's attack must . . . [include] allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id*. at 171. It is insufficient that an affidavit was made negligently or through innocent error. *Id*.

There is no merit to Holmes' contention that Hanson deliberately presented false allegations in the affidavits concerning the gas service at 403 Booker and whether a safe was present in 405 Booker, which he knew, or should have known, were false. To the contrary, Hanson did not make either factual assertions. Hanson merely re-stated information that he had received from Captain Robert Jordan, who asserted that he had verified gas service at the laundry mat was in Holmes name, and the factual assertion of the first informant that a safe was in Holmes' bedroom. As noted by the *Franks* Court, the deliberate falsity or reckless disregard with which the exclusionary rule is concerned is that of the affiant, not informants. *See Franks*, 438 U.S. at 171. Moreover, even if a defendant proves that one or more statements in an affidavit are false, he must nevertheless prove that the affiant deliberately or recklessly included the false information in the affidavit. *See United States v. Looney*, 532 F.3d 392, 394 (5th Cir. 1998).

Here, Holmes has failed to offer any proof that Hanson knew or should have known the assertions by either Captain Jordan or the first informant were false, or that Hanson deliberately or recklessly disregarded the truth. Nothing suggests that Hanson ever entered Holmes' bedroom such that he could have seen whether there was a safe present, nor was he required to do so under the circumstances. Likewise, nothing suggests that Hanson viewed, or was required to view, the gas bills for either property. Hanson could reasonably rely on the assertions of a police Captain and his confidential informant, whose other information had been corroborated.

As such, Holmes has failed to satisfy his burden of presenting a challenge that is "more than conlcusory." *Franks*, 438 U.S. at 171. Furthermore, with respect to the gas service, as noted by the government, given that the bill for service was issued to "Lil T Holmes", it would not be unreasonable to infer that the service was, in fact, in Holmes' name. Therefore, at best, any falsity associated with this allegation was made negligently or through innocent error. A showing of error which is innocent or as a result of negligence is insufficient to require a hearing. *Franks*, 438 U.S. at 171.

There is also no merit to Holmes' contention that the judge who issued the warrant was mislead by Hanson's assertion that, at night, when an individual would walk to the front door of Holmes residence, "the light on the porch would come on and the individual would step inside." While Holmes' attorney interpreted this phrase literally, that is, as an assertion by Hanson that there was a light fixture on the porch of the residence, the

**12**

affidavit of Hanson and the pictures of the porch filed by the government suggest that it is equally plausible that Hanson viewed light from the interior of the house which shown onto the enclosed porch area when the door to the home was opened, and that Hanson was simply mistaken when he assumed the light he saw illuminating the enclosed porch area was from a porch light fixture.

Hanson's inference is reasonable, given that Hanson was describing what he was able to view during nighttime surveillance, of the porch area which is fully enclosed, with lattice work only around the top of the exterior walls, and the ceiling not visible from the street. Indeed, it was not discovered that there was, in fact, no porch light fixture, until another officer recently went to the residence and inspected the ceiling of the porch. While Hanson's assumption may have been mistaken, that is not equivalent to showing that it was the product of a deliberate falsehood or a reckless disregard for the truth. *See United States v. Symmank*, 397 Fed.Appx. 991, 994 2010 WL 4116792 (5th Cir. 2010) *citing Franks*, 438 U.S. at 171. Thus, Holmes has failed to show that he is entitled to a hearing to present evidence on the issue. *See Id.*

Moreover, even if Holmes had satisfied his burden with respect to the porch light issue, the person in whose name the property is listed as owner and the error in the name of the person to whom the gas utility was billed, the affidavits, after redaction of these statements, nevertheless established probable cause. The detailed affidavits presented facts obtained from interviews with three informants, whose statements were

13

corroborated, attempts to purchase drugs from Holmes, including one attempt in which an undercover officer participated, surveillance by trained officers, including Hanson, which revealed activity at the subject premises consistent with illicit drug activity, independent research by law enforcement officials regarding Holmes' past criminal drug related actions at his residence and his efforts to protect the seizure of his property from law enforcement officials. Indeed, as previously noted, the warrants could have been issued on the information supplied solely by the second and third informants, coupled with the contemporary independent police verification of some of the details provided therein.

In light of the above, Holmes has failed to show that the good faith exception to the exclusionary rule is inapplicable in his case.

Because the defendant failed to make the necessary showing so as to require a *Franks* hearing, and because there was no Fourth Amendment violation in connection with the search of the Booker Street properties and seizure of the evidence found therein, the Motion to Suppress should be denied.

For the above reasons, **IT IS RECOMMENDED** that the Motion to Suppress or Request for a *Franks* Hearing filed by Terry Terreal Holmes [rec. doc. 107] be **DENIED.**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the clerk of

court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.**  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in Lafayette, Louisiana, July 14, 2011.

_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE