# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 10-CR-00224** |
| **VERSUS** | * | **JUDGE HAIK** |
| **TERRY TERREAL HOLMES** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

Pending before the undersigned for Report and Recommendation are the Motion and Amended Motion to Vacate filed pursuant to 28 U.S.C. § 2255 by *pro se* petitioner, Terry Terreal Holmes.  [rec. docs. 262 and 270].  The Government has filed an Answer and Memorandum in Support, to which petitioner filed a Reply. [rec. docs. 277 and 280]. For the following reasons, the undersigned recommends that the Motion and Amended Motion be **DENIED AND DISMISSED WITH PREJUDICE**. Because the undersigned is able to make this recommendation based on the record, transcripts and briefs filed by the parties, no evidentiary hearing is necessary.[1]

## BACKGROUND

Petitioner Terry Terreal Holmes ("Holmes") was indicted on multiple drug and firearms counts on July 29, 2010.  Count 1 charges Holmes with conspiracy to possess with intent to distribute cocaine, cocaine base and marijuana  in violation of 18 U.S.C. § 846. The remaining counts, counts two through eleven, allege substantive criminal

---

[1]No evidentiary hearing is required in a § 2255 petition where the claims made by the petitioner are either contrary to law or plainly refuted by the record.  *U. S. v. Green*, 882 F.2d 999, 1008 (5th Cir. 1989).

offenses which were allegedly committed in furtherance of the conspiracy. Counts 3 – 8 relate to incidents which allegedly occurred on March 20, 2007; Counts 9 – 11 relate to incidents which allegedly occurred on January 26, January 27 and April 26, 2010.

After denial of petitioner's Motion to Suppress, petitioner proceeded to trial. [*See* rec. doc. 131].   The jury found petitioner guilty of Counts 1, 3, 4, 5 and 7, that is, conspiracy to possess with intent to distribute 28 to 280 grams of cocaine base, maintaining a drug-involved premises, possession with intent to distribute cocaine base, possession with intent to distribute marihuana, and possession of a firearm after a felony conviction, all of which relate to the incidents which occurred on March 20, 2007; the jury found petitioner not guilty of all counts relating to incidents which allegedly occurred on January 26, January 27, 2010 and April 26, 2010 (Counts 9-11). [rec. docs. 155 and 156].

After a Pre-Sentence Investigation Report was prepared, Holmes was sentenced on February 27, 2012 to a total of 188 months imprisonment. [rec. docs. 210, 211].

Holmes' convictions and sentences were affirmed on direct appeal on June 12, 2013.  The sole issue presented on appeal was whether this Court properly denied Holmes' Motion to Suppress without a hearing.  [rec. doc. 256, *United States v. Holmes*, No. 12-30246 (5th Cir. 2013)].

In the instant Motion and Amended Motion to Vacate, petitioner asserts the following claims for relief: (1) Ineffective assistance of appellate counsel for failing to

2

assert a claim of ineffective assistance of trial counsel for trial counsel's failure to object to the Court's jury instructions which listed alternative means for a finding of a guilt on various counts but did not require the jury to specify on its verdict form on which of the alternative means the jury found him guilty of committing; (2) The government violated his rights under 42 U.S.C. § 1981 and the Thirteenth Amendment by selecting him for criminal investigation based on his ethnicity; (3) The indictment was insufficient because it did not allege sufficient facts that constitute a crime ("public offense"); (4) The Court lacked jurisdiction over the petitioner because the indictment did not allege a "public offense" for which petitioner could be prosecuted; (5) Ineffective assistance of trial counsel because counsel advised petitioner that the government's case was "very strong" and, accordingly, pressured him to plead guilty; (6) Ineffective assistance of trial counsel because counsel did not properly prepare to impeach the credibility of Detective John Dugas; (7) The Constitution prohibited a Magistrate Judge from conducting the jury trial and instructing the jury on the law of petitioner's case; (8) Ineffective assistance of trial counsel because counsel failed to object to the Magistrate Judge's instruction to the jury that they could convict petitioner of the charged conspiracy on a finding that petitioner possessed with the intent to distribute any of the charged substances (cocaine, cocaine base, or marijuana), instead of requiring a finding of each charged substance to convict; (9) That petitioner's conviction violates the principles set forth in *Alleyne v. United States*, 2013 WL 2922116, - - U.S. - - , 133 S.Ct. 2151 (2013); (10) 18 U.S.C. § 922(g)(1) is vague, ambiguous, and overbroad because it allows anyone "who has been convicted in

any court" to be convicted of possession of a firearm by a convicted felon; (11) Count 1 of the indictment was defective because the indictment failed to state a beginning date for the charged conspiracy to possess with intent to distribute cocaine, cocaine base, and marijuana in violation of 21 U.S.C. § 846; (12) That because petitioner is a "private citizen" subject to the Constitution, he is not subject to federal criminal jurisdiction; (13) Ineffective assistance of trial counsel because counsel failed to introduce Detective Dugas' "Probable Cause Affidavit" and grand jury testimony; (14) Ineffective assistance of trial counsel because counsel failed to investigate the case and accordingly was not prepared for trial; (15) Ineffective assistance of trial counsel because counsel failed to call defense witnesses, including Cassandra Jackson, Probation Officer Elizabeth Molbert, Attorney Leah White and Officer Hanson's three confidential informants; (16) Ineffective assistance of trial counsel because counsel failed to impeach Officer Hanson's testimony utilizing exhibits; and (17) Ineffective assistance of trial counsel because counsel failed to explain to petitioner the *Giglio* violation involving Johnny Lee Edwards and accept the Court's offer of a mistrial.

The government has filed an Answer and Memorandum in Opposition, to which Holmes filed a Reply. [rec. docs.277 and 280].

## LAW AND ANALYSIS

**Claims Properly Considered in this §2255 Motion/Scope of Review**

A federal prisoner may collaterally attack his conviction and sentence by filing a

motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  Section

2255 provides four grounds justifying relief:  (1) "that the sentence was imposed in

violation of the Constitution or laws of the United States;" (2) "that the court was without

jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the

maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral

attack."

While this language appears broad, the scope of review is actually narrow.  The

Supreme Court and the Fifth Circuit have emphasized repeatedly that "a collateral

challenge may not do service for an appeal."  *United States v. Shaid,* 937 F.2d 228, 231

(5th Cir. 1991) (*en banc*), *cert. denied*, 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141

(1992) *citing United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584 (1982).

Following a conviction and exhaustion or waiver of the right to direct appeal, federal

courts presume a defendant stands fairly and finally convicted.  *United States v.*

*Cervantes*, 132 F.3d 1106, 1109 (5th Cir.) *reh. denied* (1998) *citing Shaid,* 937 F.2d at

231-32; *Frady,* 456 U.S. at 164.  As a result, review under § 2255 is ordinarily limited to

questions of constitutional or jurisdictional magnitude.  *Cervantes,* 132 F.3d at 1109;

*Shaid,* 937 F.2d at 232; *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468 (1962).

However, those issues may not be raised for the first time on collateral review without a showing of both cause for the procedural default and actual prejudice resulting from the error. *Cervantes,* 132 F.3d at 1109; *Shaid,* 937 F.2d at 232 *citing Frady,* 456 U.S. at 166.[2]

Other types of error may not be raised under § 2255 unless the defendant demonstrates that the error could not have been raised on direct appeal and, if condoned, would result in a complete miscarriage of justice. *Cervantes*, 132 F.3d at 1109 *citing United States v. Pierce,* 959 F.2d 1297, 1301 (5th Cir.), *cert. denied*, 506 U.S. 1007, 113 S.Ct. 621, 121 L.Ed.2d 554 (1992).

As the government correctly asserts, under the applicable law, all of petitioner's claims, except his claims of ineffective assistance of trial and appellate counsel, may not properly be considered in this § 2255 Motion as the claims were not presented on direct appeal and petitioner has failed to demonstrate either cause or prejudice for his default or actual innocence. Nevertheless, all of petitioner's claims will be addressed.

---

[2] A departure from the cause and actual prejudice test might be warranted in cases "in which a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Shaid*, 937 F.2d at 232; *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2645 (1986). Petitioner does not contest his actual guilt, thus this exception is inapplicable here.

## I. Selective Prosecution

Holmes claims that the government violated his rights by selecting him for criminal investigation based on his ethnicity. While petitioner cites 42 U.S.C. § 1981 and the Thirteenth Amendment as the basis for his claim, it is clear that neither provision is applicable. The Thirteenth Amendment prohibits slavery and involuntary servitude, except as a punishment for a crime, and § 1981 is a civil statute that generally protects the right of all persons "to make and enforce contracts, to sue, be parties, give evidence."

To the extent that Holmes asserts an Equal Protection-based claim of selective prosecution, that claim is without merit.   A court's consideration of an Equal Protection-based claim of selective prosecution necessarily begins with a presumption of good faith and constitutional compliance by the prosecutors.   *In re United States*, 397 F.3d 274, 284 (5th Cir. 2005) *citing United States v. Armstrong,* 517 U.S. 456, 465-466, 116 S.Ct. 1480, 1486-1487, 134 L.Ed.2d 687 (1996).  To overcome the presumption that the government made its decision to prosecute in good faith and in a non-discriminatory manner, a defendant must prove both discriminatory effect and discriminatory purpose by presenting "clear evidence".  *Id*. *citing Armstrong,* 517 U.S. at 465, 116 S.Ct. at 1486 *quoting United States v. Chemical Foundation, Inc*., 272 U.S. 1, 14-15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926); *Webster*, 162 F.3d at 334.

To be entitled to go forward, the defendant must make out a *prima facie* case.  A *prima facie* constitutional case of selective prosecution requires the criminal defendant to bring forward some evidence that similarly situated individuals of a different race could have been prosecuted, but were not. *In re United States*, 397 F.3d at 284 *citing Armstrong,* 517 U.S. at 465, 116 S.Ct. at 1487 and *Webster*, 162 F.3d at 333-34 (emphasis added).[3]

In this case, Holmes has failed to make a *prima facie* constitutional case of selective prosecution.  Other than his conclusory allegations that he was the subject of discriminatory selective prosecution, there is nothing to suggest that Holmes was singled out for prosecution while other similarly situated persons of a different race were not prosecuted.  Stated differently, there is no allegations or evidence to suggest that Holmes, who is black, was treated differently than other similarly situated White, Hispanic or Asian persons.  Furthermore, nothing suggests that Holmes was selected for prosecution

---

[3]The *Webster* court set forth the required showing as follows:
To establish that the government has engaged in unconstitutionally discriminatory selective prosecution, a defendant must make a two-pronged showing.  First, he needs to make out a *prima facie* showing that he has been singled out for prosecution but others similarly situated of a different race were not prosecuted. *See United States v. Armstrong,* 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996); *United States v. Sparks*, 2 F.3d 574, 580 (5th Cir. 1993); *Hoover*, 727 F.2d at 389. In *Armstrong*, the Court stated, "The vast majority of Courts of Appeals require the defendant to produce some evidence that similarly situated defendants of other races could have been prosecuted, but were not, and this requirement is consistent with our equal protection case law." *Armstrong*, 517 U.S. at 469, 116 S.Ct. 1480. Second, he must demonstrate that the discriminatory selection of him for prosecution is invidious or in bad faith, in that it rests on such impermissible considerations as race, religion, or the desire to prevent his exercise of his constitutional rights. *See Sparks*, 2 F.3d at 580; *Hoover*, 727 F.2d at 389. *Webster*, 162 F.3d at 333-334.

for any invidious or bad faith reason or that the decision rested on any impermissible consideration.   Therefore, Holmes in not entitled to relief on this claim.

## II.   "Public Offense" and "Private Citizen" Claims

Petitioner alleges several related claims bearing upon this Court's jurisdiction and authority to prosecute petitioner for federal offenses.  More specifically, petitioner alleges that the indictment was insufficient because it did not allege sufficient facts that constitute a crime ("public offense"), that the court lacked jurisdiction over the petitioner because the indictment did not allege a "public offense" for which petitioner could be prosecuted and that because petitioner is a "private citizen" subject to the Constitution, he is not subject to federal criminal jurisdiction.

The indictment gave petitioner adequate notice of the charges he faced, the elements of the crimes he allegedly committed, and sufficient information for double jeopardy purposes.  As such, it was sufficient. *See Hamling v. United States*, 418 U.S. 87, 117–18, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974);  *United States v. Nevers,* 7 F.3d 59, 62 (5th Cir. 1993).  *See also Russell v. United States*, 369 U.S. 749, 767–69, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).  Moreover, defects in an indictment, such as insufficient factual allegations, do not deprive the court of jurisdiction. *United States v. Isgar*, 739 F.2d 829, 838 (5th Cir. 2014) *citing United States v. Scruggs*, 714 F.3d 258, 262 (5th Cir. 2013). As the Supreme Court has clarified, "a district court has jurisdiction of all crimes cognizable

9

under the authority of the United States and the objection that the indictment does not charge a crime against the United States goes only to the merits of the case." *Id. citing United States v. Cotton*, 535 U.S. 625, 630–31, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). Thus, a defective indictment does not deprive a court of jurisdiction.

Petitioner's claims regarding the power of the federal government to enact federal crimes and jurisdiction of the federal courts to prosecute those crimes are frivolous and similar claims have been routinely rejected.[4]  *See United States v. Gerhard*, 615 F.3d 7, 25-26 (1st Cir. 2010) (and cases cited therein).

In *United States v. Worrall*, 2 U.S. (2 Dall.) 384, 1 L.Ed. 426, 28 F.Cas. 774, 779 (1798), the Supreme Court affirmed that the enumerated powers granted to Congress in Article I, § 8 included the general power "to create, define, and punish, crimes and offenses, whenever they shall deem it necessary and proper by law to do so, for

---

[4]Petitioner appears to have modeled his arguments on "the hackneyed tax protester refrain that federal criminal jurisdiction only extends to the District of Columbia, United States territorial possessions and ceded territories." *United States v. Collins,* 920 F.2d 619, 629 (10th Cir. 1990) (collecting cases).  Those arguments have been sanctioned as frivolous [*See Id.* at 623, 633–34], and are no less so when made in the context of this case.

In his twelfth claim for relief petitioner argues "citizens of the United States, subject to the jurisdiction thereof, as found in the wording of the so-called 14th Amendment is a 'private act' rather than a public act, which designated a class of people unique to the jurisdiction of the District of Columbia, the Territories and land ceded by the State of the foreign state/nation of the United State for forts, magazines, etc. . . .Therefore it is incumbent upon your Court to seat on the law side of jurisdiction and order the government to bring forth an offer of proof that the movant private citizen can be subjected to venue foreign to the supreme law of the land and jurisdiction which uses civil statutes as evidence of the law in criminal cases. . . ."

In his fourth claim for relief, petitioner argues that because "he is not of the class defined within the legislative intent [of federal criminal statutes] . . . the indictment does not describe a public offense and the Court lacks personam jurisdiction over him" and that under the 14th Amendment, the government cannot extend the construction of criminal statutes to include him within their reach.

effectuating the objects of the [federal] government." *Id*. at 394; *see also United States v. Comstock*, 560 U.S. 126, 130 S.Ct. 1949, 1957–58, 176 L.Ed.2d 878 (2010) (noting that the Constitution "grants Congress broad authority" to create federal crimes, which Congress "routinely exercises,").  Further, Congress has chosen to vest jurisdiction over federal crimes in the federal courts.  *See* 18 U.S.C. § 3231.  That jurisdiction is not limited to crimes which occur on federally owned property, nor is a state's permission needed for federal prosecution. *Gerhard,* 615 F.3d at 7 *citing United States v. Hamilton*, 263 F.3d 645, 655 (6th Cir. 2001), *United States v. Sitton*, 968 F.2d 947, 953 (9th Cir. 1992), *abrogated on other grounds by Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) and *Cantrell v. Reno*, 36 Fed. Appx. 651, 652 (1st Cir. 2002).  Finally, because petitioner's criminal conduct occurred in DeQuincy, Louisiana, jurisdiction and venue were proper in the United States District Court for the Western District of Louisiana. *See* Fed.R.Crim.P. 18.

In the face of this authority, it is clear that the Court had jurisdiction to adjudicate the government's case against petitioner.

## III.  Instruction of the Jury by the Magistrate Judge

Holmes argues that the Constitution prohibited the undersigned Magistrate Judge from "conducting [the] jury trial" and instructing the jury on the law of petitioner's case.

Petitioner is apparently referring to the fifth day of trial while the jury was deliberating, when, because Judge Haik had to go out of town, the undersigned, with the

11

acquiescence of both parties, was asked to be available to answer any questions.[5] [rec. doc. 244, pg. 94].  During Judge Haik's absence, the jury sent a note asking if pursuant to the jury instructions on page 18 "an agreement to possess with intent to distribute ha[s] to include cocaine, cocaine base, and marijuana in order to determine conspiracy" and additionally asking for the identity of highlighted phone numbers on phone records entered into evidence.  [rec. doc. 153].

The undersigned went on the record and advised counsel of the proposed answers to each question, to which, there was no objection.[6]  [246, pgs. 7-9]. The undersigned then called Judge Haik to confirm that Judge Haik agreed with the undersigned's proposed course of action. [*Id.* at pg. 9-10].  After obtaining Judge Haik's approval, the undersigned again advised counsel of the answers which would be given to the jury, to which counsel again voiced no objection.  [*Id.* at pg. 10-11].

The jury was then brought back into the courtroom, and the undersigned read the jury the answers which had been approved by Judge Haik and counsel.  [*Id.* at pg. 11-13]. In pertinent part, the undersigned told the jury that they must unanimously agree on the subject of the conspiracy, that is, that they "must decide which of the controlled substances, if any, the defendant conspired to possess with intent to distribute. . . ." [*Id.*  at

---

[5]The jury deliberated until 9:00 p.m. on the fourth day of trial.  Judge Haik had a prior commitment in New Orleans the next morning.  Accordingly, on the morning of the fifth day of trial, Judge Haik honored the commitment and then returned to Lafayette in the afternoon, prior to the time that the jury reached its verdict.  *See* rec. doc. 144; 155; 244, pgs. 94-95 and 104-106; 246, pg. 15.

[6]The request by the defense to additionally advise that the verdict on whatever drug the jury may find must be unanimous, was granted. [rec. doc. 246, pg. 9].

pg. 11]. With respect to the second question, the undersigned advised the jury that they must decide the case on the evidence and testimony and that the Court could not provide any further information. [*Id*. at pg. 13]. After the jury retired, counsel again voiced no objection to the answers or the manner in which the answers were given to the jury. [*Id.* at pg. 14]. To the contrary, defense counsel noted that he thought the undersigned "did a good job with it . . . because . . . it's a difficult concept and you made it clear to them." [*Id.*].

Under the Federal Magistrate Judge's Act, 28 U.S.C. § 636(b)(3), a Magistrate Judge is authorized to perform "additional duties" assigned by the District Judge which are "not inconsistent with the Constitution and laws of the United States." These duties include "subsidiary matters" in felony trials "subject only to conditions or review that the court may choose to impose" and over which the District Judge retains "meaningful review." *See Gomez v. United States*, 490 U.S. 858, 871-872 and 875, 109 S.Ct. 2237, 2246 and 2247 (1989).

Thus, when presented with a virtually identical claim, the Eighth Circuit held that a Magistrate Judge did not overstep Constitutional boundaries when the District Judge left a Magistrate Judge to tend a deliberating jury, take a jury's question and, after consultation with the District Judge, responded to the question, and thereafter, accepted the jury's verdict, thereby allowing the District Judge to leave the city to perform other work. *United States v. Demarrias*, 876 F.2d 674, 677 (8th Cir. 1989); *See also Fuller v.*

13

*Fiber Glass Systems, LP*, 2009 WL 1791307, *7-8 (E.D. Ark. 2009) (holding that under

§ 636(b)(3), a Magistrate Judge had authority to oversee jury deliberations, to act as an

intermediary and give an authorized jury instruction and to receive the jury's verdict in the

absence of the District Judge).

That is precisely what occurred in this case.  The undersigned, with the

acquiescence of both parties, took the jury's questions, prepared a response, contacted

Judge Haik for his approval of the response and then merely communicated the Court's

approved answer to the jury. In so doing, the undersigned simply acted as an intermediary

between Judge Haik and the jury.  Judge Haik maintained full control of the proceedings

by telephone and the undersigned merely performed "subsidiary matters under his [Judge

Haik's] direction."  Accordingly,  petitioner's claim is without merit.

## IV. *Alleyne* Claim

Holmes argues that he is entitled to relief under the United States Supreme Court's

decision in *Alleyne v. United States*, 2013 WL 2922116, - - U.S. - - , 133 S.Ct. 2151

(2013).  In *Alleyne,* the Supreme Court held that any fact that increases a defendant's

mandatory minimum sentence must be submitted to a jury to be proved beyond a

reasonable doubt. *Alleyne*, 133 S.Ct. at 2163.  As the government correctly argues,

*Alleyne*, like its predecessors, is not retroactively applicable to cases on collateral review.

*In re Kemper*, 735 F.3d 211 (5th Cir. 2013) *citing Foster v. Quarterman*, 466 F.3d 359,

369–70 (5th Cir. 2006) (holding that *Blakely, Ring*, and *Apprendi* are not retroactively

applicable to cases on collateral review) and *In re Elwood*, 408 F.3d 211, 213 (5th Cir.

2005) (holding that *Booker* is not retroactively applicable to cases on collateral review);

*see also In re Payne*,  2013 WL 5200425, at *1-2 (10th Cir. 2013) (agreeing with the

Seventh Circuit that *Alleyne* is an extension of *Apprendi* and does not apply

retroactively); *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013) (holding that

*Alleyne,* an extension of *Apprendi*, was not made retroactive);  *Clinton v. Young*, 2013

WL 5233712, *1-2 (W.D. La. 2013) *citing Mingo v. United States,* 2013 WL 4499249, at

*2 (W.D. Mich. 2013) (denying § 2255 motion because "The holding in *Alleyne* does not

qualify as a new 'watershed rule.'"), *United States v. Eziolisa,* 2013 WL 3812087, at *3

(S.D. Ohio 2013) (holding that because *Alleyne* neither places any primary conduct

beyond the power of the United States to punish, nor adopts a "watershed" rule, it does

not apply retroactively to a motion for relief from sentence filed under § 2255), *Carter v.

Coakley*, 2013 WL 3365139, at *4 (N.D. Ohio 2013) (holding that *Alleyne* did not

provide relief under § 2241 because "*Alleyne* is not such an intervening change in the law

and does not decriminalize the acts which form the basis of Petitioner's conviction."),

*Smith v. Holland*, 2013 WL 4735583 (E.D. Ky. 2013), *Simpson v. United States,* 721 F.3d

875, 2013 WL 3455876, at *1 (7th Cir. 2013), *United States v. Ailsworth,* 2013 WL

4011072, at *1 (D. Kan. 2013), *United States v. Stewart*, 2013 WL 4553349 (S.D. Miss.

2013) and *United States v. Cantu-Rivera*, 2013 WL 3873281 (S.D. Tex. 2013); *Acosta v.

United States*, 2013 WL 6172123, *3 (N.D. Tex. 2013).

Consequently, *Alleyne* does not afford Holmes any relief.

## V.  Constitutionality of 18 U.S.C. § 922(g)(1)

Holmes argues that 18 U.S.C. § 922(g)(1) is vague, ambiguous, and overbroad

because it allows anyone "who has been convicted in any court" to be convicted of

possession of a firearm by a convicted felon.  This claim is without merit.  The Fifth

Circuit "has repeatedly emphasized that the constitutionality of § 922(g)(1) is not open to

question."  *United States v. DeLeon*, 170 F.3d 494, 499 (5th Cir. 1999) *citing United*

*States v. Gresham*, 118 F.3d 258, 264 (5th Cir.), *cert. denied*, 522 U.S. 1052, 118 S.Ct.

702, 139 L.Ed.2d 645 (1998) and *United States v. Rawls*, 85 F.3d 240, 242 (5th Cir. 1996).

*See also United States v. Darrington*, 351 F.3d 632, 633-35 (5th Cir. 2003) (rejecting an

overbreadth challenge to the statute); *United States v. Wallace*, 889 F.2d 580, 583 (5th Cir.

1989) (same).

## VI.  Sufficiency of Count 1 of the Indictment

Holmes alleges that Count I of the Indictment was defective because it failed to

state a specific start date for the charged conspiracy to possess with intent to distribute

cocaine, cocaine base, and marijuana in violation of 21 U.S.C. § 846.[7]  As noted by the

government, the failure to identify a specific start date in an indictment does not render

---

[7]The Indictment states in pertinent part: "Beginning on an unknown date and lasting until on or about the 26th day of April 2010. . . ."

16

the indictment constitutionally deficient.  *United States v. Rawlins*, 606 F.3d 73, 79 (3rd

Cir. 2010) (upholding an indictment alleging a conspiracy running "from a time unknown

and continuing to September[ ] 2004) *citing United States v. Pease*, 240 F.3d 938, 943

(11th Cir.2001) (upholding indictment alleging a conspiracy "[f]rom an unknown date

through on or about July 21, 1998") and *United States v. Hristov*, 466 F.3d 949, 954 (11th

Cir. 2006) (recognizing in *dicta* the sufficiency of an indictment that charged a conspiracy

running from "an unknown date through September 9, 2003"). Thus this claim merits no

relief.

## VII.  Ineffective Assistance of Counsel

Courts can consider claims of ineffective assistance of counsel that are brought for

the first time in a § 2255 motion. *United States v. Gaudet*, 81 F.3d 585, 589 (5th  Cir.

1996).

To prevail on an ineffective assistance of counsel claim, a petitioner must establish

that (1) counsel's representation fell below an objective standard of reasonableness; and

(2) there is a reasonable probability that, but for counsel's deficient performance, the

outcome of the proceedings would have been different.  *Strickland v. Washington*, 466

U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984).

The burden is on the petitioner to show that counsel's representation fell below an

objective standard of reasonableness.  *Id.* at 688.  Judicial scrutiny of counsel's

17

performance must be "highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689.  The court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (citation omitted).  Thus, this court's review "strongly presum[es] that counsel has exercised reasonable professional judgment."  *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996) *quoting  Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th  Cir. 1986).  Courts may "not find ineffective assistance of counsel merely because [the court] disagree[s] with counsel's trial strategy." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) *citing Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). Rather, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  *Martinez v. Dretke,* 404 F.3d 878, 885 (5th Cir. 2005); *United States v. Cavitt*, 550 F.3d 430, 440 (5th Cir. 2008*) quoting Crane*, 178 F.3d at 314.

*Strickland'*s prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.[8] A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) *citing Strickland,* 104 S.Ct. at 2068.

A petitioner must affirmatively prove prejudice. *Deville*, 21 F.3d at 659; *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995); *Earhart v. Johnson*, 132 F.3d 1062,1066 (5th Cir. 1998). Self serving conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland's* prejudice element." *Sayre*, 238 F.3d at 635. Moreover, allegations of a mere possibility of a different outcome are insufficient to establish prejudice. *Lamb v. Johnson*, 179 F.3d 352, 359 (5th Cir. 1999).

Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." *Strickland,* 466 U.S. at 689-94. Petitioner must satisfy both prongs of *Strickland,*

---

[8]The *Strickland* court outlined the extent of prejudice that must be established by the defendant:
An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of the criminal proceeding if the error had no effect on the judgment. *Cf. United States .v Morrison,* 449 U.S. 361, 364-65 (1981).

Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability exists if the probability is sufficient to undermine confidence in the outcome.

When a defendant challenges a conviction , the question is whether there is reasonable probability that absent the errors the fact-finder would have a reasonable doubt respecting guilt.
*Strickland, supra*, at pages 691-692.

demonstrating both that counsel's  performance was deficient and that the deficiency prejudiced the defense.  *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Green v. Johnson,* 160 F.3d 1029, 1035-36 (5th Cir. 1998). However, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.*" Green,* 160 F.3d at 1043; *United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989).

Petitioner contends that he was denied the effective assistance of trial counsel because his retained attorney, Todd S. Clemons ("Clemons"), (a) advised petitioner that the government's case was "very strong" and, accordingly, pressured him to plead guilty; (b) did not properly prepare to impeach the credibility of Detective John Dugas; (c) failed to object to the Magistrate Judge's instruction to the jury that they could convict petitioner of the charged conspiracy on a finding that petitioner possessed with the intent to distribute any of the charged substances (cocaine, cocaine base, or marijuana), instead of requiring a finding of each charged substance to convict; (d) failed to introduce Detective Dugas' "Probable Cause Affidavit" and grand jury testimony; (e) failed to investigate the case and accordingly was not prepared for trial; (f) failed to call defense witnesses, including Cassandra Jackson, Probation Officer Elizabeth Molbert, Attorney Leah White and Officer Hanson's three confidential informants; (g) failed to impeach Officer Hanson's testimony utilizing exhibits; and (h) failed to explain to petitioner the *Giglio* violation involving Johnny Lee Edwards and the Court's offer of a mistrial.  For the

20

following reasons, these claims are without merit and, accordingly, do not warrant *habeas* relief.

**Advised of Counsel and Pressured to Plead Guilty**

Petitioner alleges that counsel advised him that the government's case was "very strong" and, accordingly, pressured him to plead guilty.  Petitioner did not plead guilty, but instead went to trial.  As such, Holmes has shown no prejudice as a result of counsel's alleged actions.  This Court therefore need not inquire into the adequacy of counsel's performance.  *Strickland,* 466 U.S. at 689-94.

**Preparation to Impeach Detective John Dugas/ Failure to Introduce Evidence**

In related claims, Holmes alleges that counsel did not properly prepare to impeach the credibility of Detective John Dugas and  failed to introduce Detective Dugas' "Probable Cause Affidavit" and grand jury testimony.

The record reveals that Detective Dugas' testimony related primarily to the investigation of the incidents which allegedly occurred in January and April 2010. [*See* rec. doc. 243, pgs. 42-71; 243, pgs. 105-107; 245, pgs, 82-95 and 133-191].  Petitioner was not convicted on any of those substantive Counts.  Accordingly, petitioner can not demonstrate prejudice as a result of counsel's alleged deficient performance.  Simply stated, petitioner cannot show that the result of his trial would have been different had counsel been more prepared or had counsel introduced the cited evidence; the outcome of

petitioner's trial could not have been any more favorable, petitioner was acquitted of this alleged criminal conduct.

Furthermore, it is clear from the record that counsel was, in fact, prepared to question Detective Dugas and did, in fact, repeatedly impeach Detective Dugas' credibility without the need for, or use of, the Dugas' affidavit or grand jury testimony. Thus, counsel's performance was not deficient.

Dugas testified on direct examination that he began his investigation of Holmes in January or February 2009.[9]  The investigation included the use of a pole camera to do surveillance and undercover buys, which occurred on January 26, 2010 and January 27, 2010.[10]  Dugas gave "buy money" to confidential informant Brandon Rougeau, who then bought drugs from alleged unindicted co-conspirator James Brock.[11]

On cross-examination, Clemens, skillfully attacked the credibility of Dugas' testimony and undermined the reliability of both transactions and the video surveillance. Clemons brought out the fact that when using a confidential informant with felony convictions, such as Rougeau, audio recordings of the transactions should be obtained. Yet, Dugas did not record any conversations between Rougeau and Brock, and there was

---

[9]rec. doc. 243, pg. 43.

[10]rec. doc. 243, pg. 43, 53.

[11]rec. doc. 243, pg. 52-55.

no recorded communications between Holmes and either Rougeau or Brock.[12]

Clemons additionally forced Dugas to admit that prior to the buys, the informant is thoroughly searched to ensure that the informant doesn't "hustle" the police.  Yet, Dugas failed to strip Rougeau down or make him take his shoes or socks off.[13]  Moreover, after the buys, Dugas was forced to admit that the "buy money" was never recovered from Holmes.[14]  Counsel further confirmed that in over a fourteen month investigation, these January, 2010 transactions were the only two times that buys were accomplished, and Holmes did not even appear on the videos of those buys.[15]

On cross examination, counsel also verified that the search of Holmes' property failed to uncover items and evidence which are generally associated with drug dealing; there were no drug ledgers, police scanners, walkie talkies, or hidden compartments in the house and only a small amount of cash totaling $486.00.[16]  Moreover, marijuana was the only drug found and it was not inside the residence, but rather was found outside Holmes' house under an un-gated shed which anyone could have accessed.[17]

---

[12]rec. doc. 243, pg. 57-58, 61-63.

[13]rec. doc. 243, pg. 62-65.

[14]rec. doc. 243, pg. 66-67.

[15]rec. doc. 243, pg. 69, 55.

[16]rec. doc. 243, pg. 90-92.

[17]rec. doc. 243, pg. 92-93.

Defense counsel also later called Dugas to the stand as a defense witness, at which time counsel cast even further doubt on the credibility of Dugas' testimony.  At that time, counsel was able to get Dugas to admit that he never saw drugs in Holmes' hands and never saw anyone put money in Holmes' hands.  Rather, Dugas merely assumed that what he saw on the videotapes were drug deals.[18]  Likewise, Dugas admitted that he never actually saw drugs in Vincent's hands but, rather, assumed the videos depicted drug buys; then, after Dugas admitted he never saw Vincent walking with crack in her hands,  used Dugas' affidavit in support of the search warrant for Holmes property (which contained an assertion to the contrary) to impeach Dugas.[19] Finally, counsel got Dugas to admit that after sending informants several times to implicate Holmes, none ever were successful in obtaining drugs directly from Holmes.[20]

In light of the above, and in light of the verdict obtained, the record is clear that counsel's performance was in no way deficient.  To the contrary, counsel's handling of the government's lead investigator regarding his 2009 and 2010 investigation and 2010 search of Holmes property was extremely effective.[21]  Counsel repeatedly impugned Dugas' testimony and undermined his credibility.  As a result, the jury unquestionably rejected

---

[18]rec. doc. 245, pg. 137-138.

[19]rec. doc. 245, pg. 138, 140-141.

[20]rec. doc. 245, pg. 143.

[21] Indeed, Judge Haik acknowledged this undeniable fact at the end of Holmes trial telling Holmes he was "much better off with [Clemons] than without [Clemons]." rec. doc. 244, pg. 59.

Dugas' testimony with respect to his investigation; there simply was no need for any further attack.

For these reasons, relief is not warranted on this claim.

**Failure to Object to the Magistrate Judge's Instruction to the Jury**

Holmes argues that counsel was ineffective by failing to object to the undersigned Magistrate Judge's instruction to the jury that they could convict petitioner of the charged conspiracy on a finding that petitioner possessed with the intent to distribute any of the charged substances (cocaine, cocaine base, or marijuana), instead of requiring a finding that petitioner possessed with the intent to distribute all three of the charged substances to convict.

It is well settled that in order to convict a defendant of a multiple-object drug conspiracy, the evidence need not establish every object charged.  *See United States v. Hernandez*, 202 Fed. Appx. 708, 709 (5th Cir. 2006) (upholding a conviction for a multiple-object conspiracy involving cocaine *and* marijuana where the evidence did not establish that the conspiracy involved cocaine); *United States v. Pena-Rodriguez,* 110 F.3d 1120, 1131 (5th Cir. 1997) (rejecting the contention that the district court's instructions to the jury broadened the charged offense from a conspiracy to possess with the intent to distribute "marijuana and cocaine" to a conspiracy to possess with the intent to distribute "marijuana or cocaine").   To the contrary, "a disjunctive statute may be

25

pleaded conjunctively and proved disjunctively." *Pena-Rodriguez,* 110 F.3d at 1131 *quoting United States v. Johnson,* 87 F.3d 133, 136 fn. 2 (5th Cir. 1996) *quoting United States v. Pigrum*, 922 F.2d 249, 253 (5th Cir. 1991). Thus, undersigned's charge to the jury was a correct statement of the applicable law. Accordingly, there was no basis for an objection. Counsel need not make a frivolous objections or a futile motion. *See United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) *citing Green*, 160 F.3d at 1037 ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness. . . ."); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) *citing Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir.1990) ("This Court has made clear that counsel is not required to make futile motions or objections."); *Paredes v. Quarterman*, 574 F.3d 281, 291 (5th Cir. 2009) (failure to raise a meritless objection does not satisfy the deficient performance prong of *Strickland*). The first *Strickland* prong is clearly not met.

**Failure to Investigate to Prepare for Trial**

Holmes argues that defense counsel Clemons was ineffective because he failed to investigate the case and accordingly was not prepared for trial. In support, Holmes cites letters Clemons wrote in February, 2011 and his February 28, 2011 Motion to Continue the trial which was, at that time, set to commence on March 21, 2011, wherein counsel stated that he needed additional time to review the voluminous discovery and to prepare for trial. [*See* rec. doc. 81]. The trial was reset for August 8, 2011. [rec. doc. 86].

Holmes additionally cites Motions to Withdraw filed thereafter by Clemons and Holmes [rec. docs. 87, 97 and 98] and counsel's representation to the Court during a May 11, 2011 hearing on the latter Motions filed by Holmes wherein counsel explained that he had not again visited Holmes since April 26, 2011 because he had a murder trial, and that although the case was complicated, should the Court grant withdrawal and appoint counsel for Holmes, that lawyer could be prepared to try the case by the August 8, 2011 trial date. [rec. doc. 115, pgs. 5-7].

At the conclusion of that hearing, after Clemons and Holmes engaged in a private, off-the-record discussion, Holmes decided to withdraw his Motion and "keep" Clemons, provided that Clemons filed a Motion to Suppress on his behalf. [*Id.* at 11-13]. That Motion to Suppress was indeed filed by Clemons and ruled on by the Court prior to trial. [rec. doc. 107, 117 and 131].

None of the cited evidence supports a finding that Clemons failed to properly investigate the case or prepare for trial. To the contrary, the evidence demonstrates the opposite. In February, 2011, Clemons received a continuance of the March, 2011 trial so that he would be properly prepared. At the May 11, 2011 hearing, both Clemons and Holmes acknowledged that they had met on April 26, 2011 and Clemons stated, without contradiction by Holmes, that they had engaged in a meaningful conversation about the facts and evidence on that date. Clemons also advised the Court that counsel could be prepared for the August 8, 2011 trial date.

Finally, Holmes alleges that on the first day of trial counsel told him he wasn't prepared as he hadn't "looked over" petitioner's case and that he was going to go into trial "blind." "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Cox v. Stephens*, - - Fed. Appx. -, 2015 WL 525326 (5th Cir. 2015) *quoting Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993) (citation and quotations omitted).  Bare allegations, like Holmes', are insufficient.  *See Id*.  Moreover, Holmes' self-serving allegations are refuted by the record before this Court.  The trial transcript reflects that Clemons was well-prepared and did a highly competent job of defending the case.  Indeed, counsel's efforts resulted in the jury acquitting Holmes of all of the substantive counts dealing with incidents which allegedly occurred in 2010.

For these reasons, this claim is without merit.

**Failure to Call Defense Witnesses**

Holmes alleges that Clemons failed to call defense witnesses, including Cassandra Jackson, Probation Officer Elizabeth Molbert, Attorney Leah White, Officer Hanson's three confidential informants, Major Skinner, and Robert "Bobby" Jordan.  Holmes further alleges that he provided Clemons "with name after name" of "unbiased witnesses that could have been used to clear [his] name" who were "willing and ready to testify on [his] behalf that [he] was not in the drug business", but that Clemons made no effort to contact them or call them as defense witnesses. [rec. doc. 270, pg. 10].

Complaints of uncalled witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy and because allegations of the content of a prospective witness' testimony are largely speculative. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001); *Evans v. Cockrell*, 285 F.3d 370, 377(5th Cir. 2002). "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, a habeas court cannot even begin to apply *Strickland* 's standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance." *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

Thus, to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must "set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) *citing Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

Moreover, where the only evidence of a missing witness's testimony is from the defendant, courts view such claims with great caution. *Sayre,* 238 F.3d at 636. Thus, "[a] prisoner's bald conclusory assertion that [favorable] witnesses were not called does not serve to 'overcome the strong presumption that his counsel's actions were reasonable.'" *Sayre,* 238 F.3d at 636.

29

Finally, to demonstrate the requisite *Strickland* prejudice, the petitioner must show not only that the witness' testimony would have been favorable, but also that the witness was available and willing to testify at trial. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985); *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981). Holmes fails to meet this standard.

Petitioner does not make any specific affirmative showing of what each witnesses' testimony would have been and his mere speculation is insufficient to justify relief. Specifically, petitioner fails to demonstrate that each witnesses' testimony would have been favorable to the defense or that each witness was, in fact, available and willing to testify at trial.  In sum, Holmes' claim encounters the exact problem of speculation that the Fifth Circuit seeks to avoid; without making the required showing, Holmes is asking the Court to take the leap of faith that counsel "would have found something" that may have created a different result at trial had counsel performed as Holmes proposes.  *See Day,* 566 F.3d at 538.  For these reasons, relief is not warranted with respect to this claim.

**Failure to Impeach Officer Hanson's Testimony**

 Incorporated into Holmes' argument regarding un-called defense witnesses, Holmes also asserts that counsel was ineffective by failing to impeach Officer Hanson's testimony utilizing exhibits and documentary evidence. [*See* rec. doc. 270, pg. 8-10]. More specifically, Holmes apparently believes that Clemons failed to adequately demonstrate, through the use of photographs, that Hanson's testimony regarding what he

could see while conducting surveillance on Holmes' house was untrue. He further appears to claim that Clemons failed to adequately undermine Hanson's (and Dugas') conclusion that the people he saw coming and going from Holmes residence were there for the purpose of buying and selling drugs.

As was the case with Holmes' claim regarding the effectiveness of the cross-examination of Officer Dugas, it is clear from the record that counsel did, in fact, impeach Detective Hanson's credibility without the need for, or use of, additional exhibits or documentary evidence.  Thus, counsel's performance was not deficient.

During cross-examination, Clemons made Hanson admit that Douglas Road hits Highway 27 and dog-legs into Booker Street where Holmes' house was located, and therefore Douglas Road was staggered a little bit to the south of Booker Street.  When Hanson testified that he could still see the front of Holmes' house from that location, Clemons made Hanson acknowledge that there was a "building on the corner" and "a lot of lattice" on the porch which obstructed the view to some extent.[22]  Thus, Clemons cross-examination showed that Hanson's view was obstructed.

Holmes faults Clemons for not presenting Hanson with images and maps Holmes apparently obtained from Google maps in 2011, 2012 and 2013 to further undermine

---

[22]rec. doc. 243, pg. 10-12.

31

Hanson's testimony.[23]  However, the record reflects that the building Hanson apparently referred to by Hanson was not erected until 2010, after Hanson's surveillance had been conducted, and instead a vacant field was in that location.[24]  Indeed, this very fact was used to impeach the testimony of Detective Ledoux.[25]  Thus, had counsel shown photographs of the area as it existed in 2006 and 2007, the government could have established this fact and thereby destroyed the benefit derived by the defense as a result of Hanson's erroneous recollection.  Accordingly, Holmes has shown no prejudice as a result of counsel's alleged error.

Contrary to Holmes' present argument, Clemons also more than adequately undermined Hanson's conclusion that the people he saw coming and going from Holmes residence were there for the purpose of buying and selling drugs.  During cross-examination, Clemons established that Hanson did not actually see any drugs being exchanged, did not document his surveillance, did not succeed in any attempt to obtain drugs from Holmes through any undercover buys and did not stop any of the people he witnessed coming from Holmes' residence to verify drugs had been obtained during the visits.[26]

---

[23]*See* rec. doc. 270, pg. 21-26.

[24] *See* rec. doc. 242, pg. 114-116, 119-122.

[25]*See Id.*

[26]rec. doc. 242, pg. 71-72; rec. doc. 243, pg. 15.

Moreover, Clemons impeached Hanson's testimony on several occasions utilizing the affidavits the he presented to obtain the 2007 search warrants.  Clemons established that Hanson did not find any guns in Holmes bedroom as he testified on direct, that there was no porch light on Holmes residence and that the bills for the laundromat were not in Holmes' name as stated in his affidavits.[27]

Although the jury apparently accepted Hanson's testimony, in spite of this impeachment, that does not make counsel ineffective.  The record clearly demonstrates that counsel repeatedly and effectively impugned Dugas' testimony and undermined his credibility.   In sum, Holmes has not shown that counsel was deficient in his questioning of Hanson.

For these reasons, relief is not warranted on this claim.

**Failure to Explain *Giglio* Violation and Accept the Court's Offer of a Mistrial**

Holmes claims that Clemons was ineffective because he failed to explain to petitioner the *Giglio* violation involving the cooperation of Johnny Lee Edwards and the Court's offer of a mistrial.  The record reflects that on cross-examination, Johnny Lee Edwards repeatedly stated that he received nothing in exchange for his cooperation.[28] During trial, after Johnny Lee Edwards testified, when the defense called Detective Dugas

---

[27]rec. doc. 242, pg. 69-71, 74-75, 78; rec. doc. 243, pg. 12-13.

[28]rec. doc. 243, pg. 196-198.

33

back to the stand, Clemons found out that in exchange for his statement, Detective Dugas

advised the District Attorney of Edwards' cooperation.[29]  Accordingly, Clemons

extensively questioned Dugas about the deal, making the jury aware of the fact that

because Edwards was a "three-time loser" he was facing an habitual offender prosecution

punishable by life imprisonment, that Dugas told Edwards that it would therefore be

"wiser for him [Edwards] to cooperate", that if he cooperated, Dugas promised Edwards

he would tell the District Attorney (who makes prosecutorial decisions), of Edwards'

cooperation and, as a result of Edwards' cooperation, Dugas had, in fact, told both the

former and current prosecutors of Edwards' assistance in the investigation against

Holmes.[30]

Prior to making closing statements, Clemons placed on the record that Edwards'

cooperation was not disclosed prior to trial.  The Court, noting the defense had had ample

opportunity to interrogate Dugas about this issue, nevertheless offered a mistrial.

However, after conferring with Holmes, Clemons confirmed that Holmes did not desire a

mistrial and that the were "happy with the trial."[31]

In closing argument, Clemons used the *Giglio* violation to Holmes' advantage

arguing that Edwards lied about the deal he got with the District Attorney and that the

---

[29]rec. doc. 245, pg. 152-156; rec. doc. 244, pg. 3-7.

[30]rec. doc. 245, pg. 152-156.

[31]rec. doc. 244, pg. 3-8.

defense therefore had to call Dugas back to the stand to elicit the truth.[32]

In light of the above, it is clear that counsel was not ineffective or objectively unreasonable with respect to his handling of the *Giglio* violation or his declination of the Court's offer of a mistrial.  Holmes faults counsel for failing to explain the import of the violation, allegedly telling Holmes that "a mistrial means you go back to jail and you will have to do your whole case over again" and that Holmes would "have to pay for another attorney."  That is exactly what would have happened if a mistrial would have been declared. Moreover, the record clearly reflects that Holmes was present in Court when the *Giglio* violation was discussed and a mistrial was offered.  Thus, contrary to petitioner's present allegations, it is clear that Holmes understood the impact of the violation. Furthermore, counsel consulted with Holmes about the violation prior to declining the Court's offer of a mistrial.

The decision not to seek a mistrial is strategic and, accordingly, if conscious and informed, cannot be the basis for an ineffective assistance of counsel claim unless it is so ill chosen that it permeates that trial with unfairness.  *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).  Counsel's decision, agreed to by petitioner, was clearly both conscious and informed and in no way was ill-chosen.  Accordingly, the first *Strickland* prong is not satisfied.

---

[32]rec. doc. 244, pg. 48.

Additionally, Holmes fails to demonstrate that he suffered any actual prejudice as a result of the *Giglio* violation or declination of a mistrial.  Defense counsel elicited testimony regarding the error during his questioning of Detective Dugas, making the jury fully aware of Edwards' bias, and then skillfully used the violation to further undermine Edwards' credibility in closing.  Moreover, given that petitioner was acquitted of the 2010 substantive counts and the strong evidence presented by the government with respect to the remaining counts, petitioner has not demonstrated that the result of his trial would have been different had counsel accepted a mistrial.   Holmes conclusory allegations to the contrary are insufficient.  *See Sayre*, 238 F.3d at 635; *Lamb*, 179 F.3d at 359.

## VIII. Ineffective Assistance of Appellate Counsel

Ineffective assistance of appellate counsel claims are governed by the test set forth in *Strickland v. Washington*. *Amador v. Quarterman*, 458 F.3d 397, 410 (5th Cir. 2006). Therefore, petitioner must demonstrate that his appellate counsel's performance was deficient and that he was prejudiced by the deficient performance because the outcome of his appeal would have been different. *Id*. at 410–11.  "Counsel need not raise every nonfrivolous ground of appeal, but should instead present solid, meritorious arguments based on directly controlling precedent." *Ries v. Quarterman*, 522 F.3d 517, 531–32 (5th Cir. 2008) (citation and internal quotation marks omitted).  Thus, appellate counsel is not ineffective for failing to present frivolous arguments on appeal. *See Williams v. Collins*, 16 F.3d 626, 635 (5th Cir. 1994);  *United States v. Garcia*, 348 Fed. Appx. 65, 66 (5th Cir.

2009) *citing United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) (failure to raise legally meritless argument cannot support an ineffectiveness claim).

Petitioner claims that he received ineffective assistance of appellate counsel because counsel failed to assert a claim of ineffective assistance of trial counsel for trial counsel's failure to object to the Court's jury instructions which listed alternative means for a finding of a guilt on various counts, but did not require the jury to specify on its verdict form on which of the alternative means the jury found him guilty of committing.

As previously noted,  in order to convict a defendant of a multiple-object drug conspiracy, the evidence need not establish every object charged.  *See Hernandez*, 202 Fed. Appx. at 709 (5th Cir. 2006); *Pena-Rodriguez,* 110 F.3d at 1131.   To the contrary, "a disjunctive statute may be pleaded conjunctively and proved disjunctively."  *Pena-Rodriguez,* 110 F.3d at 1131 (citations omitted).  Thus, both the Court's jury instructions and verdict form were correct under the applicable law.  Accordingly, there was no basis for an objection by trial counsel, nor was appellate counsel ineffective for failing to present this legally meritless argument on appeal.  *Williams*, 16 F.3d at 635; *Garcia*, 348 Fed. Appx. at 66 *citing Kimler*, 167 F.3d at 893.  The first *Strickland* prong is clearly not met.

For the foregoing reasons, the undersigned recommends that Terry Terreal Holmes § 2255 Motion and Amended Motion be **DENIED and DISMISSED WITH**

**PREJUDICE.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association***, 79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on**

**whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A**

**courtesy copy of the memorandum shall be provided to the District Judge at the**

**time of filing.**

Signed June 30, 2015 at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

39